### ELLIOTT v. PEET.

(Circuit Court of Appeals, Third Circuit. February 3, 1913.)

No. 1,610.

1. APPEAL AND ERROR (§ 1008*)—WAIVER OF JURY—STATUTORY SUBMISSION —EFFECT OF VERDICT.

The findings of the trial judge under a statutory submission have the same effect on appeal as the verdict of a jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3969; Dec. Dig. § 1008.*]

2. BANKS AND BANKING (§ 126*)—DRAFTS—CHECKS—OBLIGATION TO PAY— LOANS.

The M. Bank having suffered an impairment of capital, it was arranged that a draft should be drawn on defendant, who was president of plaintiff's bank, individually, to cover the impairment until the danger of governmental examination was over, and that the draft should be made good by the check of a corporation drawn on the M. Bank. The draft was drawn, accepted, and paid through plaintiff's bank; the amount being charged to defendant's individual account, and offset by a credit deposit of the corporation's check for the same amount, which, when presented to the M. Bank for payment, was protested for lack of funds, and on its return defendant directed that it be carried as a cash item of plaintiff's bank, instead of being charged back to his account. *Held*

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that, the effect of such transaction being to withdraw the amount of the draft from the assets of plaintiff's bank, the credit of the check should have been canceled, and the draft charged against defendant's account.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 305, 309; Dec. Dig. § 126.*]

**3.** BANKS AND BANKING (§ 80*)—INSOLVENCY—CLAIMS—REIMBURSEMENT—BURDEN OF PROOF.

Where the president of a bank, in order to tide over a bank's difficulties, borrowed $50,000, giving both the bank's and his own securities as collateral, the burden was on him to clearly establish the nature and character of his outlays and expenses in securing such loan, in order to recover the same from the bank's receiver.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.*]

**4.** SET-OFF AND COUNTERCLAIM (§ 61*)—WITHDRAWAL.

Where, in an action by a receiver of a bank against its former president to recover an overdraft, defendant claimed as an offset misappropriation of a certificate of deposit by the receiver, but there was no sufficient evidence that the certificate belonged to defendant, he, having submitted his claim to the court, was not entitled as of right to withdraw the same in order that he might relitigate the matter in another case.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 134; Dec. Dig. § 61.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. B. McPherson, Judge.

Action at law by Milton C. Elliott, as receiver of the Deposit National Bank of Philadelphia, to the use of the stockholders' agent, against F. M. Peet. From a judgment for plaintiff (192 Fed. 699), defendant brings error. Affirmed.

John G. Kaufman and V. Gilpin Robinson, both of Philadelphia, Pa., for plaintiff in error.

F. B. Bracken, of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLSTAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Elliott, receiver, brought suit, to the use of the Deposit National Bank of Philadelphia, against Peet to recover an overdraft of some $6,600 of the latter's account as depositor. Such action Peet defended on three grounds: First, that any alleged overdraft was caused by the wrongful charging to such account of a deposited check which was lost by the bank's alleged negligence in failing to duly forward it for collection; second, that defendant was entitled to credit for $1,400 for services rendered to, and expenses incurred for, the bank by defendant in raising a loan of $50,000; and, third, that defendant was, under the Pennsylvania statute, entitled to a certificate in his favor for $8,000, being the amount of a certificate of deposit, issued by the Manasquan National Bank, which defendant alleged was his property, and which the plaintiff bank, by its receiver, wrongfully converted to its use. By stipulation, under R. S. § 649,† the parties waived trial by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† U. S. Comp. St. 1901, p. 525.

jury. In pursuance thereof the court heard the proofs, found for the full amount of the plaintiff's claim, and denied the defendant's defenses. Thereupon defendant, inter alia, moved for leave to withdraw the claim for the certificate above referred to as his third item of defense. Such leave was refused. The court having entered judgment for plaintiff for the full amount of his claim, defendant sued out this writ.

[1] Without incumbering this opinion with the details of the complicated dealings and relations of the parties and banks involved in this case, and without entering upon a discussion of each of the thirteen assignments of error, we limit ourselves to a statement of facts throwing light on the three questions in which the assignments substantially center. The findings of the judge, under the statutory submission, having the effect of a verdict (Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373), the first question arises: Was there competent evidence on which to base the finding that Peet's account was overdrawn?

[2] We have carefully examined the evidence, and, while there was conflict on the vital point of whether the delay in the collection of the check was caused by Peet's own directions, or the neglect of his bank, the proofs were such that, if believed, they warranted the finding, which was:

"At the time of the transactions in question Peet was, and had been for about a year, the president of the Deposit Bank, and was taking the part usually taken by such an officer in the management of its affairs. He was also a depositor, and had an active account upon the books. The First National Bank of Manasquan, N. J. (hereinafter called the Manasquan Bank), also maintained such an account, and kept therein a part of the reserve required by the national banking law. The New Jersey-West Virginia Bridge Company (hereinafter called the Bridge Company) was a depositor and a large borrower in the Manasquan Bank, and its business relations with that bank were close and intimate. * * * Late in March, 1908, the Manasquan Bank was undergoing examination by the government. Its affairs were not in a satisfactory condition, but what especially concerns us now is the fact that its reserve was below the legal limit. The sum of $6,000 was needed at once to make good the impairment, and in order to meet this situation the Bridge Company agreed as a matter of accommodation to assist the Manasquan Bank, and thereupon drew a draft on Peet individually for $6,000, payable to the order of the Manasquan Bank. This draft was duly indorsed by the bank, and, while it was not formally accepted by Peet, the amount of the draft was charged to his account by his express direction, and was credited upon the account of the Manasquan Bank. Peet was at first unwilling to accept liability upon the draft, but finally agreed to do so upon the verbal promise of Magee, the president of the Manasquan Bank, that the Bridge Company's check would be taken care of in a short, but unspecified, time. After he accepted liability for the $6,000, and this sum had been credited to the Manasquan Bank, the transaction became a loan from Peet to that bank, and was equivalent to the transfer of that amount in cash. Accompanying the draft was a check of the Bridge Company for $6,000, drawn upon its account in the Manasquan Bank in favor of Peet. Of course, if this check had been paid, Peet's loan to that bank would thus have been repaid, and the transaction would then have become what it was probably intended to be at the first, namely, an accommodation loan of $6,000 from the Bridge Company to the Manasquan Bank. But the check was not paid. It was retained in the Deposit Bank until April 30th, when it was credited to Peet's account and forwarded to the Manasquan Bank for collec-

tion. The funds were not there to meet it, and it was duly protested for nonpayment; the Manasquan Bank being then on the point of passing into the hands of a receiver. The check was returned to the Deposit Bank, and if it had been charged, as in the usual course of business a check forwarded for collection and afterwards protested should be charged, against the account of the payee, it would have gone into Peet's account as a debit, and would thus have balanced the previous credit. He would then have been just where he had placed himself when he accepted liability for the draft, namely, in the position of a creditor of the Manasquan Bank (and also of the Bridge Company) for $6,000, and his account would have been properly diminished by precisely that sum. But the check was not so charged. On the contrary, Peet directed it to be carried as a cash item among the assets of the Deposit Bank, and it was being carried as such an item when this bank also—in July, 1908—was taken charge of by a receiver. Meanwhile Peet continued to draw checks against his account (which, as has been shown, was $6,000 larger than it should have been); and the result was that, when the bank's doors were closed, he had drawn out the $6,000 improperly to his credit and $577.83 in addition."

This finding is supported by the testimony of the cashier of the bank, who says that, after the draft and check were received, he made out and signed a charge check, March 26, 1908, which read, "Pay to First National Bank of Manasquan, $6,000, for draft of New Jersey-West Virginia Bridge Company's account. Charge F. M. Peet. M. B. V."—and both charged the draft to Peet's account and credited its proceeds to the Manasquan Bank by Peet's directions. He further testified that by this transaction the draft and charge check became a check on Peet's account, and that the Bridge Company's check was held until April 30, 1908, when it was sent forward, by Mr. Peet's direction, for collection. It was not paid. Under these proofs the court rightly held that an overdraft of Peet's account was shown, and his liability therefor established.

[3] Turning to the second question, it appears from the proofs that, shortly before the failure of the Deposit National Bank of Philadelphia, the defendant, for the purpose of tiding over the bank's difficulties, borrowed from a trust company in New York $50,000, giving as collateral therefor both the bank's and his own securities. The receiver afterwards paid off the loan, but in order to get back his own securities from the trust company Peet alleged he was put to an expense of some $1,400. Assuming, as we do, the right of Peet to be reimbursed for all reasonable outlays and expenses incurred in securing this loan for his bank, the burden, of course, rests upon him to clearly establish the nature and character of such outlays. In that respect his proofs are deficient, for they furnish no data or facts such as would warrant either this court or the court below in sustaining such a defense. The court below was not in error in disallowing a claim, he (the defendant) did not establish.

The third question concerns the right of Peet, individually, to a certificate of deposit issued by the Manasquan Bank, which recited that a certain construction company had deposited $8,000 in the bank payable to the order of F. M. Peet, president. This certificate afterwards came into the possession of the plaintiff receiver, and he received credit for it in settlement of the accounts of the plaintiff bank with the Manasquan. It will be observed that whether the draft was rightly or wrong-

ly used in such settlement is not here involved. If the certificate was the individual property of Peet, he was entitled to recover for it; on the other hand, if it was not his individual property, the use made of it by the receiver is immaterial. On the controverted question of ownership, however, the court found against Peet, and an examination of the proofs satisfies us that the proofs were such as to warrant such a finding.

[4] The subsequent action of the court in refusing to allow this claim to be withdrawn, if assignable for error, does not, in our view, involve legal or discretionary error. The defendant himself made such a claim by his pleadings, and his proofs were taken and submitted to the court. Having chosen his own forum, and had the opportunity of a finding in his favor, we see no good reason why, when such finding was against him, the defendant should be allowed to relitigate the matter in another case.

Finding no error in the record, the judgment is affirmed.